INHABITANTS OF PLYMOUTH *vs.* COUNTY COMMISSIONERS OF PLYMOUTH.

County commissioners cannot be allowed to file separate answers to a petition for a writ of *certiorari* to quash proceedings of their board.

An assessment of damages, signed by a majority of the county commissioners, after a hearing by the whole board, is valid.

Technical objections to a petition to county commissioners for the assessment of damages cannot be first made upon an application for a writ of *certiorari* to quash their proceedings.

A writ of *certiorari* will not be granted to quash the proceedings of county commissioners in assessing damages for the taking of private property for public uses, because the commissioners have assessed the entire damages suffered on a petition which does not definitely allege the extent of the damages, if no objection was made at the hearing before the commissioners to the admission of evidence of the extent of the damages caused by the taking.

A petition to county commissioners to assess the damages caused by the taking of water and of water power for a public use, under *St.* 1855, *c.* 61, alleged the petitioners' seisin

and possession of a mill and water power, and set forth the nature and extent of their rights in such water power, and in the water of a certain pond, and then alleged that the town took a portion of the said water power and water, tapping said pond and conducting a part of the water by a canal to another pond, and at sundry times deepened the canal, thereby diverting a portion of the water of the first pond which formerly flowed by the petitioners' mill, and diminishing their water power. *Held,* that an assessment of damages upon this petition should not be quashed on a writ of *certiorari* for uncertainty in the petition; nor because it appeared by another petition for the assessment of like damages, that the commissioners, without objection, so far as appeared, had assessed entire damages under the first petition; nor because the petition did not allege that the price to be paid by the town for taking the water could not be fixed by agreement with the owners.

PETITION filed at May term 1858 in Plymouth, for a writ of *certiorari* to quash an assessment of damages by the county commissioners of Plymouth on the 8th of January 1858, after a hearing before the whole board, and signed by Martin Bryant and James Bates, two of the three commissioners, upon a petition of the Russell Mills, for water and water power taken by the town of Plymouth under the *St.* of 1855, *c.* 161.

Upon this petition notice was ordered to the county commissioners. At October term 1858 they filed a joint answer, stating, among other things, that, immediately after such hearing and assessment, Mr. Bryant went out of office; that after the signing of the assessment Mr. Bates became satisfied that it was made upon erroneous principles as to damages and under a mistake of the facts; and that the present board of commissioners were unanimously of opinion that it ought not to be enforced, and that a new hearing ought to be had, but were in doubt as to their power to order a new hearing.

In 1859 Mr. Bates moved for leave to file a separate and amended answer.

*W. G. Russell,* in support of the motion.

*C. G. Davis,* for the petitioners.

BY THE COURT. Notice was properly ordered to the county commissioners of the petition for a writ of *certiorari* to quash the proceedings of that tribunal. The answer or return to this petition is the act of the court, and must be the joint answer of those having by their clerk the custody and control of the record of the proceedings sought to be quashed. Separate answers cannot therefore be allowed.

*Motion overruled.*

The case was now argued on the petition and original answer, and is stated in the opinion.

*B. F. Thomas & Davis,* for the petitioners.

*Russell,* (*E. Ames & W. Whiting* with him,) for the respondents.

DEWEY, J.    This is an application for a writ of *certiorari* to the county commissioners of the county of Plymouth, to certify to this court their proceedings upon a petition by the Russell Mills, praying for an assessment of damages against these petitioners for taking certain water power.    The application for a writ of *certiorari* is not supposed by either party to open the questions at issue between the parties upon the merits of the case generally, as they might have been raised upon the original hearing.    Whatever errors may have been committed by the commissioners in this respect, they being the constituted tribunal to settle the amount of damages, we have only to inquire whether these proceedings have been within their proper jurisdiction, and not in violation of law.    Even technical errors of law, not affecting the substantial justice of the case, will not require us to grant a writ of *certiorari.*    Hence in the present case, although it may be alleged that excessive damages have been awarded by the county commissioners, yet we cannot review their judgment in that respect upon this petition.

Many of the causes of complaint set forth in the petition for a writ of *certiorari* were not pressed upon us at the argument, either for the reason that they were not open here, or for other causes, and we shall confine ourselves to the consideration of the grounds now urged as reasons for granting the prayer for a *certiorari.*

1st.    There is no doubt that the award of a majority of the commissioners assessing damages in such cases would be a good award, although one of their number should dissent therefrom. Rev. Sts. *c.* 2, § 6, *cl.* 3.

2d.    It is equally clear that the damages claimed by the Russell Mills were to be determined in accordance with the proceedings before county commissioners under the Rev. Sts. *cc.* 24 and 39; and not under *c.* 116, containing provisions for

assessing damages occasioned by the erection of mills and the flowing of lands.    Under the *St.* of 1854, *c.* 351, certain species of damages that might be sustained by the construction of this aqueduct were to be assessed in the manner provided by the Rev. Sts. *c.* 116 ; but that act gave no authority to the town of Plymouth to take water or water power, except by purchase, and no provision was made therein for assessing damages for the taking of water and water power without such purchase from the owner.    The *St.* of 1855, *c.* 61, which did give such power, prescribed that the price to be paid in the latter case should be estimated by the county commissioners in the manner provided in the 24th and 39th chapters of the Rev. Sts. We are therefore solely to inquire whether the proceedings in question are in conformity with the chapters last mentioned.

Upon recurring to the petition filed by the Russell Mills, it will be found that the petitioners allege their seisin and possession of a mill with water power and privileges, and the right of having all the water of a certain stream flow into their pond and over their dam for the benefit of their mill, setting forth in their petition the nature and extent of their rights in such water power, and in the water of Great South Pond, and then proceeding to allege that the town of Plymouth, " on the 1st of August 1855, and in May 1856, and subsequently, by its agents, took a portion of the said water power and water, tapping said South Pond, and conducting a part of the water by a canal to Little South Pond, so called, and at sundry times deepening said canal, thereby diverting a portion of the water of the said South Pond, which had been used to flow by said watercourse to the privilege of the petitioners as aforesaid, and diminishing the force and volume of said watercourse, and diminishing the water power of the petitioners ; and said town took the said water and water power under chapter 351 of the statutes of 1854, and chapter 61 of the statutes of 1855, for the construction, maintenance and supply of the aqueduct authorized in said acts."

Upon this petition the commissioners assessed damages in favor of the Russell Mills in the sum of $ 15,061.93.    To this

assessment the town of Plymouth objects that the proceedings are voidable for uncertainty; and that this assessment of damages, by reason of such uncertainty and indefiniteness, and because it would be no bar to a future petition for the like damages for taking the water and water power of the Russell Mills, should be avoided by a writ of *certiorari.* The alleged uncertainty is in reference to what portion of water power is stated to have been taken or injured, or to be the subject matter for which the damages are awarded.

This objection, so far as it may apply to any defect in the petition itself, setting forth the claim for damages, comes at a very late stage, not having been made a ground of objection at the hearing before the commissioners, so far as we are informed. The form of this petition is not therefore to be subject to those critical or technical objections that might have been properly urged at an earlier stage of the case, and before the submission to the commissioners and the publication of their award thereon.

It is not in accordance with the usual practice in applications for damages for land taken, or for other interests affected by the location of railroads or highways, to set forth minutely the extent of the damages. The allegation of the taking of the property in such cases is general, and damages are awarded to the extent of the injury shown. It is true that in the case of railroads and highways, there is required to be a location duly made and recorded by the party taking the land, and this may to some extent render more definite the precise injury for which damages are awarded. If the statute under which this water power was taken did not make the full provision as to specifying the extent of the taking, or the injury for which a claim arose for damages, the statute, being a private act procured by the town of Plymouth, must be taken to be accepted and approved by the town, and no prejudice should result to the party whose land or water power is taken, from the want of greater definiteness and certainty as to the amount of water power taken and appropriated by the construction of the aqueduct.

Looking at the record of this particular petition, we perceive

no ground for maintaining the position that the award embraced damages beyond those stated in the petition. The assessment is made upon it, as found recited in the decree of the commissioners. It is in the answer of the commissioners to another petition, that of the Russell Mills, for a jury to pass upon a second petition of theirs for further damages, that we find the statement that "they have estimated and allowed the Russell Mills the whole value of all the water of Great South Pond, and comprised all that could be taken by said town of Plymouth on a previous petition." We do not perceive that any objection was taken by the town of Plymouth at the hearing to the admission of evidence of the extent of the loss occasioned by taking the water power of the Russell Mills in the construction of the aqueduct. On the contrary, it was stated at the argument, and not controverted, that the position was taken by the town of Plymouth at the hearing of these two petitions before the commissioners, that all the damages recoverable for interfering with the privileges of the Russell Mills at the Great South Pond and taking their water power must be recovered under the first petition, and that this was a bar to any recovery for any damage set forth in the second petition; and certainly this view was adopted and acted upon by the commissioners, and the claim set up under the second petition wholly rejected. Taking the record merely of the first petition and the proceedings under it, including the assessment of damages, there is nothing to indicate that the damages were assessed for any other claims than those set forth in that petition. If we look beyond this, and recur to the evidence of what took place, as derived from other sources, although we find that the commissioners allowed to the Russell Mills on the first petition the whole damages sustained by them by the taking of their water privilege, yet we also find that any recovery beyond what was embraced in the first petition was objected to by the town of Plymouth, and that they had the benefit of a finding in their favor on the second petition, and an allowance of their costs on the same, because the whole damages for such taking had been allowed on the first petition. Further, it may be added

that the two petitions would clearly embrace all the claims for which damages were assessed. Both were acted on by the commissioners, and the two awards will together form a perfect bar to a future petition for damages sustained by the Russell Mills, by the taking of their water power for the construction of the aqueduct.

It becomes therefore only necessary to consider whether the petition, upon which the damages were awarded, is so far defective and uncertain in setting forth the taking of the water power of the Russell Mills, and the extent of the injury sustained thereby, as to require us to order a *certiorari* on that account. In the opinion of the court, this point taken by the present petitioners is not maintained. As to the objection that there is no sufficient allegation that " the price to be paid by the town for taking the water could not be fixed by agreement with the owners thereof," that is perhaps sufficiently answered by the allegation in the petition that " the town of Plymouth has neglected and refused to make compensation." But beyond this, the objection comes too late, after the adjudication and award of the commissioners upon a hearing of both parties.

*Writ of certiorari refused.*